IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| STEVEN A. HOADLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-CV-200 |
| | ) | |
| TENNESSEE STUDENT ASSISTANCE | ) | |
| CORPORATION and TENNESSEE | ) | |
| EDUCATION LOTTERY | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

By stipulation dated August 4, 2009, plaintiff voluntarily dismissed defendant Tennessee Education Lottery Corporation from this litigation. Now before the court is the motion to dismiss [doc. 9] filed by the remaining defendant, Tennessee Student Assistance Corporation ("defendant"). Plaintiff has filed a response, and the motion is now ripe for the court's consideration. For the reasons that follow, the motion will be granted and this case will be dismissed.

I.

*Applicable Legal Standards*

Defendant brings its motion under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is

entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing and quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

In resolving a Rule 12(b)(6) motion, the court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). The court need not, however, accept legal conclusions presented in the complaint, nor should it make unwarranted factual inferences. *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

II.

*Factual and Procedural Background as Presented by the Complaint*

Plaintiff is a student at the University of Tennessee. Defendant administers the state of Tennessee's HOPE Scholarship, which provides $4,000.00 annually to students attending four-year colleges and universities. Persons eligible for the HOPE Scholarship include "[d]ependent children of . . . U.S. military . . . who maintain Tennessee residency

2

while stationed out of state . . . ."

Plaintiff applied for a HOPE scholarship in the spring or early summer of 2007. At that time, he was living in Pennsylvania with his father, who is serving on active duty with the military. Plaintiff's and his father's state of permanent residence is Tennessee, and plaintiff is considered an "in-state" student by the University of Tennessee.

In the summer of 2007, defendant notified plaintiff that he would not be considered for a HOPE Scholarship because he attended high school in Pennsylvania. In July and August of that year, both plaintiff and his father wrote to defendant explaining that plaintiff maintains permanent Tennessee residency. Defendant nonetheless denied the scholarship application.

A United States congressman then contacted defendant on plaintiff's behalf. On September 5, 2007, defendant responded by letter explaining that the denial was based on its interpretation of the "home of record" requirement found at § 49-4-926(c)(1) of the Tennessee Code. Defendant interprets § 926(c)(1) as imposing an "additional residency requirement for a dependent child of active members of the armed forces."

A state senator then sought opinion from the Tennessee Attorney General regarding whether § 49-4-926 unconstitutionally discriminates against dependent children of active duty military personnel. By opinion dated February 26, 2008, the Attorney General deemed the statute "constitutionally suspect."

According to the complaint, defendant "continues to refuse to award the HOPE scholarship to" plaintiff. Plaintiff filed his lawsuit on May 6, 2009, seeking compensatory damages and a declaration that § 926(c)(1) is unconstitutional.

III.

*Analysis*

Defendant asks the court to dismiss plaintiff's lawsuit as untimely. The statute of limitations applied to § 1983 actions is the limitations period of the forum state. *See Kuhnle Bros. v. County of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997). In Tennessee, "Civil actions for compensatory or punitive damages . . . brought under the federal civil rights statutes" must be filed within one year "after the cause of action accrued." Tenn. Code Ann. § 28-3-104(a)(3). A cause of action "accrues" under § 1983 "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kuhnle*, 103 F.3d at 520 (citation omitted).

Plaintiff's scholarship application was denied in the summer of 2007 and his lawsuit was not filed until almost two years later. Nonetheless, he argues that the complaint is not time-barred because he has pled facts sufficient to invoke the "continuing violation" exception. The court does not agree.

The continuing violation exclusion is strictly construed, *see Austion v. City of Clarksville*, 244 Fed. App'x 639, 647 (6th Cir. 2007), and is rarely applied to § 1983 actions.

4

*See Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). The exception is applied in cases "involving a longstanding and demonstrable policy of discrimination" against a plaintiff's class. *See id.* at 268. Within the Sixth Circuit, a three-pronged test is used to determine whether a continuing violation has been pled:

> 1. The defendant's wrongful conduct must continue after the precipitating event that began the pattern;
>
> 2. Injury to the plaintiff must continue to accrue after that event; and
>
> 3. Further injury to the plaintiff must have been avoidable if the defendant had at any time ceased its wrongful conduct.

*Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999) (citing *Kuhnle*, 103 F.3d at 522). Obviously, the first and second prongs of this test make a distinction between conduct and injury.

For purposes of the instant motion, the court will presume that defendant's interpretation of § 49-4-926(c) evidences a "longstanding" policy of discrimination against plaintiff's class. Plaintiff's continuing violation argument fails nonetheless, as his complaint does not satisfy the first element required by *Kuhnle* and *Tolbert* - wrongful *conduct* by the defendant continuing into the limitations period. *See Dixon v. Anderson*, 928 F.2d 212, 217 (6th Cir. 1991), *abrogated on other grounds by Sharpe*, 319 F.3d at 268.

Under a continuing violations analysis, a plaintiff's constitutional claims must each be evaluated separately. *See Kuhnle*, 103 F.3d at 520. The instant complaint alleges

5

two such claims - equal protection violation and denial of the right to travel. As for the right to travel, the complaint's allegations cannot be read as referring to any travel other than plaintiff's presence out of state *prior to* (and resulting in) the denial of his HOPE scholarship application in 2007. That denial predates the limitations period. Plaintiff's claim regarding denial of his right to travel is thus untimely and must be dismissed.

Plaintiff's equal protection claim, as pled, is also time-barred. Again, plaintiff has pled no wrongful *conduct* by defendant continuing into the limitations period. Plaintiff's allegation that he would still be entitled to HOPE funds but for the initial denial is not enough. There must be present conduct, not merely residual effects of a time-barred action. *See Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009). "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Tolbert*, 172 F.3d at 941 (citation omitted). "It should be clear that without a specific, allegedly discriminatory <u>*act*</u> against [the plaintiff] within the limitations period, mere existence of an alleged policy of violating equal protection rights will not toll the running of the statute of limitations." *Dixon*, 928 F.2d at 217 (emphasis added). "[T]he emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." *EEOC v. Penton Indus. Publ'g*, 851 F.2d 835, 838 (6th Cir. 1988) (citation omitted) (emphasis in original).

Plaintiff has not pled that the defendant revisited the allegedly discriminatory decision within the limitations period. *See Tolbert*, 172 F.3d at 941. The present complaint

6

alleges no *action* violating plaintiff's equal protection rights after defendant's September 5, 2007 letter. The court notes that, at paragraph 18 of the complaint, plaintiff conclusorily contends, "Nevertheless, TSAC continues to refuse to award the HOPE scholarship to" plaintiff. Plaintiff does not allege, however, that he or anyone on his behalf reapplied or made further inquiry after September 5, 2007, or that defendant revisited the issue after that date. To conclude that paragraph 18 of the complaint makes such an allegation would require the court to make an unwarranted inference which it is not allowed to do. *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (citation and quotations omitted). In responding to the defendant's motion, plaintiff could have submitted proof of continuing wrongful conduct but he did not do so.

At best, the complaint alleges passive inaction by the defendant after September 5, 2007. "Passive inaction . . . does not support a continuing violation theory." *Tolbert*, 172 F.3d at 940. As the Sixth Circuit has noted in the context of a takings claim,

> If this court were to accept the plaintiffs' theory that a taking is continuous until it is reversed, then all takings would constitute 'continuing violations,' tolling the statute of limitations. There would effectively be no statute of limitations, and the plaintiffs' theory could easily be extended to many other violations outside of the takings context. This is not the law.

*Ohio Midland, Inc. v. Ohio Dep't of Transp.*, 286 Fed. App'x 905, 913 (6th Cir. 2008).

7

## IV.

### *Conclusion*

Plaintiff's claim accrued no later than September 2007. He did not file suit within one year of the accrual, and the continuing violations doctrine is inapplicable to his complaint as pled. Defendant's motion to dismiss must accordingly be granted.

Having so ruled, the court need not address defendant's Rule 12(b)(2) arguments pertaining to sovereign immunity. Further, to the extent that plaintiff seeks to state an independent claim under 28 U.S.C. § 2201, the Declaratory Judgment Act, that statute "does not create subject matter jurisdiction where none otherwise exists. It creates a particular kind of remedy available only in actions where the District Court already has jurisdiction to entertain a suit." *King v. Sloane*, 545 F.2d 7, 8 (6th Cir. 1976). Lastly, because the only claim over which this court has original jurisdiction will be dismissed, the court declines to exercise supplemental jurisdiction over the remaining state law issues. *See* 28 U.S.C. § 1367(c)(3).

An order consistent with this opinion will be entered.

ENTER:

                                              s/ Leon Jordan
                                         United States District Judge